# UNITED STATES DISTRICT COURT FOR MIDDLE DISTRICT OF FLORIDA, JACKSONVILLE DIVISION

**ROY DAVID KINARD**
    Plaintiff,

v.                                              3:22-cv-897-TJC-JBT

                                CASE NO.: TO BE ASSIGNED

**THE FLORIDA DEPARTMENT OF
CORRECTIONS, an agency of the
State of Florida,
CENTURION OF FLORIDA, LLC.,**
Current Chief Medical provider for the
Florida Department of Corrections, et. Al.,

    Defendant(s)

## 42 U.S.C. § 1983 CIVIL RIGHTS COMPLAINT
## JURY TRIAL SOUGHT

The Plaintiff, Roy David Kinard ("Kinard"), proceeding pro se herby sues

One and all the following defendants:

**The parties to this Complaint:**

**A.    PLAINTIFF**

Name of Plaintiff: ROY DAVID KINARD
Inmate Number   DC # 969084
Prison or jail:    Union Correctional Institution
Mailing Address  P.O. Box 1000
                 Raiford, Florida 32083-1000

Plaintiff came into the FDC in July 2011, at NFRC and was

transferred to Union C.I. in July 2018 where he remains today.

On March 24, 2022 Plaintiff, while housed in Dorm I1-207 at Union

1

Correctional Institution, injured his foot when he slipped in water that was on the steps of the housing unit where he is assigned, which came from the roof that was leaking inside of the housing unit and which was known to be leaking by DOC dorm officers and DOC officials.

## B.   DEFENDANTS:

### 1. Defendant Florida Department of Corrections ["FDC"]:

Florida Department of Corrections ("FDC"], is an agency of the State of Florida and is being sued by Plaintiff for the delay and thus denial of Adequate Medical Care to wit; "A Fractured Foot".

The delay and medical care has caused extreme pain, swelling, discoloration, probable long term disability,

(1)**RICKY D. DIXON**
Official Position: Secretary, FDC
501 S. Calhoun St., Tallahassee, Fla. 32399-2500
Official Capacity, Declaratory & Injunctive Relief

(2)**CENTURION OF FLORIDA, LLC,**
Official Position: Current Contract Medical Provider for the FDOC
Paddock Park Prof. Bldg. 3200 S.W. 34th Ave. Bldg. 700, Suite 701,
Ocala, Fla. 34474

(3) Doctor Llorens Chief Health Officer for Union Correctional Institution,
P.O. Box 1000, Raiford, Florida 32083-1000

## III.   EXHAUSTION OF ADMINISTRATIVE REMEDIES

Exhaustion of administrative remedies is required prior to pursuing a civil rights action regarding condition or events in any prison, jail, or detention center. 42 U.S.C. § 1997 e(a).

Plaintiff is fully aware that any claims for which the administrative grievance process was not completed prior to filing this lawsuit may be

subject to dismissal. Plaintiff has complied with all conditions precedent and has properly exhausted all administrative remedies prior to filing this action. Specifically, Plaintiff complied with the applicable grievance process in that he: (a) filed a formal grievance to the Warden's office at Union Correctional Institution ("Union CI") concerning the ongoing refusal to adequately provide medical needs to Plaintiff's Fractured Foot and (b) submitted a timely appeal to the Office of the Secretary of FDC.

## IV.   PREVIOUS LAWSUITS

NOTE FAILURE TO DISCLOSE ALL PRIOR CIVIL CASES MAY RESULT IN THE DISMISSAL OF THIS CASE. IF YOU ARE UNSURE OF ANY CASES YOU HAVE FILED, THAT FACT MUST BE DISCLOSED AS WELL.

A. Have you initiated other actions in <u>state court</u> dealing with the same or similar facts/issues involved in this action.

Yes ( )            No (XXX)

1.    Parties to previous action:
      (a)   Plaintiff(s): N/A
      (b)   Defendant(s) N/A
2.    Name of judge:  N/A   Case #: N/A
3.    County and judicial circuit: N/A
4.    Appropriate filing date:  N/A
5.    If not still pending, date of dismissal: N/A
6.    Reason for dismissal: N/A
7.    Facts and claims of case: N/A
      (Attach additional pages as necessary to list state court cases.)
B. Have you initiated other actions in federal court dealing with the Same or similar facts/issues involved in this action?

Yes ( )      No (XX)

1.    Parties to previous action: N/A
      (a)   Plaintiff(s): N/A
      (b)   Defendant(s) N/A
2.    Name of Judge: N/A
3.    County and judicial circuit: N/A
4.    Appropriate filing date: N/A
5.    If not still pending: N/A

6.    Reason for dismissal: N/A

(Attach additional pages as necessary to list state court cases.)

C. Have you initiated <u>other actions</u> (besides those listed above in Questions (A) and (B)) in either state or federal court that relate to the fact or manner of your incarceration (including habeas corpus petitions) or the conditions of your confinement (including civil rights complaints about any aspect of prison life, whether it be general circumstances or a particular episode, and whether it involved excessive force or some other wrong)?

Yes (X)    No ( ) Please see pages 4"A"

If yes, describe each action in the space provided below. If more than one action, describe all additional cases on a separate piece of paper, using the same format as below.

(a) Plaintiff(s): Roy David Kinard
(b) Defendant(s) State of Florida, 146 so 3d 1182 (Fla. 2nd DCA 2013)
2. Name of Judge: Northcutt, Villante, and Wallace.
3. County and judicial circuit: Pasco County, Sixth Judicial Circuit
4.    Approximate filing date: 2011
5.    If not still pending, date of dismissal: 2013
6.    Reason for dismissal: Per Curiam Affirmed
7.    Facts and claims of case: Documents lost, cannot remember.
1.    Parties to previous action: Roy David Kinard State of Florida
(a)    Plaintiff(s) Roy David Kinard
(b)    Defendant(s) Respondent: Secretary Fla. Dept. of Corr.
1.    Case No.: 8:17-cv-01252-WFJ-SPF
2.    Name of Judge: William F. Jung
3.    Middle District Tampa, Florida
4.    Approximate filing date: January 2017
5.    Denied
6.    Reason for dismissal. Per Curiam Affirmed
7.    Facts and claims of case: 2-Ineffective Assistance Appellate Counsel Claims 9-Ineffective assistance of trial counsel claims, 1-Giglio claim, 1-Williams Rule Claim

4

(a)     Plaintiff(s): Roy David Kinard
(b)     Defendant(s) CENTURION OF FLORIDA, LLC., and
        DEPARTMENT of CORRECTIONS
2.      Name of Judge: MARCIA MORALES HOWARD
3.      Middle District Jacksonville, Florida
4.      Approximate filing date: April 29, 2019
5.      Settlement reached in case
6.      Reason for dismissal: N/A
7.      Facts and claims of case: Failure to treat for Hepatitis C
D.      Have you ever had any actions in federal court dismissed
        as frivolous, malicious, failing to state a claim, or prior to
        service? If so identify each and every case so dismissed:

        Yes ( )     No (XXX)

1. This is a civil rights action brought by Plaintiff Kinard seeking monetary damages for the Defendants' violation of Plaintiff's rights secured by the Civil Rights Act of 1871, 42 U.S.C. § 1983, the Eighth Amendment to the United States Constitution, the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, et seq, and the Rehabilitation Act of 1973, 29 U.S.C. § 701, et seq. The Defendants violated Plaintiff's rights by denying him treatment that was required and necessary to prevent undue pain suffering and long term disability caused by inadequate treatment of a fracture foot, which constituted deliberate indifference to Plaintiff's serious medical needs in violation of the Eighth Amendment and discrimination on the basis of disability in violation of the Americans with Disabilities Act ("ADA") and the Rehabilitation Act ("RA").

## Jurisdiction and venue

2. This Court has jurisdiction over the claims asserted herein

pursuant to 28 U.S.C. § 1331 in that this is a civil action arising under the Constitution of the United States.

3. Venue is proper In the Middle District of Florida.

(a)   Defendant FDC is headquartered with its principal place of business in Leon County, Florida;

(b)   All of the Defendants are residents of the State as defined in 28 U.S.C. § 1391;

(c) Plaintiff's claims arise from FDC's unlawful policy and practice for the management and necessary medical treatment, which was created by high-level officials at FDC headquarters in Tallahassee, Florida; and

(d) The alleged acts of misconduct giving rise to this cause of action occurred within the Middle District of Florida (Jacksonville Division).

4. The claims alleged herein are brought within the applicable statute of limitations.

## **THE PARTIES**

**5.** Plaintiff Kinard brings this action for violation of the Eighth Amendment, the Americans with disabilities Act ("ADA"), and the Rehabilitation Act ("RA"). Plaintiff Kinard is an inmate incarcerated in the Florida Department of Corrections' prison system. He has been incarcerated since July 2009. Throughout his incarceration, Plaintiff has

6

been housed at multiple facilities that are owned and operated by Defendant FDC, including Central Florida Reception Center ("CFRC"), Taylor Correctional Institution ("Taylor CI"), and Union Correctional Institution ("Union CI") Plaintiff was denied treatment for his Fractured Foot at Union CI.

6. Defendant FDC is an agency of the State of Florida that owns and operates correctional facilities throughout the state, and which receives federal funds to operate its agency. Defendant FDC is headquartered in Leon County, Florida. Defendant FDC is responsible for overseeing the operations of its Contractors, including Defendant Centurion and Doctor Llorens. At all times relevant hereto, Defendant FDC owned and operated all facilities where Plaintiff was housed. Plaintiff was denied adequate medical care for his fractured foot at Union CI. Plaintiff is a qualified individual with a disability because of his Fractured Foot and Defendant FDC discriminated against Plaintiff because of his Fractured Foot.

7. Defendant Centurion is a Florida-based company and provider of correctional healthcare services. Defendant Centurion has provided healthcare services to inmates at FDC prisons throughout the state since approximately February 1, 2016. Defendant Centurion provides healthcare services at Union CI.

8. Doctor Llorens is the Chief Medical Provider at Union Correctional

7

Institution and works for Centurion a Florida-based company and provider of correctional healthcare services.

## FACTS
### Background Information on Plaintiff's Fractured Foot

9. Plaintiff is currently incarcerated at Union Correctional Institution and at all times relevant hereto was under the care, custody and control of the State of Florida, Department of Corrections. Plaintiff is currently 57 years of age and has been incarcerated since 2009. At the times relevant hereto, Defendant, <u>Centurion</u>, and <u>Doctor Llorens</u>, via Defendant <u>Dixon</u> failed to provide adequate medical treatment.

10. On March 24, 2022 Plaintiff Roy David Kinard injured his foot when he slipped in a puddle of water inside the dorm where he is housed, that was there from where the roof was leaking and water was running down the wall. As Plaintiff was going down the stairs in I-Dorm where he is housed, the Plaintiff went up in the air and landed on his left foot as it rolled under his body. Plaintiff was able to get up but was in pain. Plaintiff's foot begin to swell and started to turn to a blood red. Officers that worked the housing unit were aware of the injury to Plaintiff's foot and never called for medical to assist Plaintiff.

11. On March 27, 2022, because at this point Plaintiff could hardly

walk, a sick call request was placed in the sick call box. When Plaintiff wasn't called to sick call, another sick call request was placed in the sick call request box. On April 7, 2022, Plaintiff was called to sick call. Plaintiff was seen by R.N. Gilbert. RN Gilbert asked Plaintiff why he didn't claim a medical emergency since the first sick call was never received. Plaintiff explained that we (inmates) are told unless we are bleeding or dying it is not a medical emergency. R.N. Gilbert advised Plaintiff Kinard, that if this was ever to happen again she don't care who tells us not to declare a medical emergency unless we are bleeding or dying, that I'm to declare a medical emergency. Nurse Gilbert observed the foot swelling, the black and red discoloration on top and bottom of foot and then took Plaintiff over to see the Doctor on duty. At this time Plaintiff was given crutches, and Ibuprofen and Plaintiff was told he would be on the callout for x rays on Monday April 11, 2022. Plaintiff was not called for x rays on Monday April 11, 2022.

12. On April 12, 2022 Plaintiff filed a grievance and a sick call request. That afternoon around 2:30 p.m., Plaintiff was called to Medical. Plaintiff was seen by Dr. Llorens and A.R.N.P. Putnum. Plaintiff Kinard's foot was then wrapped with an ace bandage, given a two week bed rest and was told he would have x rays on April 18, 2022. On April 18, 2022 Plaintiff received x rays of his foot. Plaintiff was told that he would see a

9

Doctor within a few days and if needed would be called back in a week for further follow up x rays.

13. Plaintiff's crutches pass and bed rest lay in ended on April 27, 2022, and Plaintiff was never seen for a follow up visit with the Doctor or x rays. On April 28, 2022 Plaintiff was required to go back to work where he has to walk almost a half mile to work and walk stairs and long hallways on death row. Plaintiff's foot swelled up and got very inflamed and the pain was excruciating. Plaintiff on May 7, 2022 filed another sick call request.

14. On May 11, 2022 Plaintiff was seen at sick call by R.N. Ms. Gilbert. Ms. Gilbert advised Plaintiff, that Plaintiff was supposed to have had a follow up from his x ray on April 18, 2022, which never occurred. R.N. Gilbert further advised that plaintiff was scheduled for May 13, 2022 to see the Doctor. Plaintiff was never called to see the Doctor on May 13, 2022.

15. Plaintiff on May 14, 2022 submitted another sick call request due to the swelling, inflammation, and continued excruciating pain from the foot injury, and the fact that Plaintiff was not seen by any Doctor as told he would on May 13, 2022. May 16, 2022 Plaintiff filed a third grievance due to the fact he is not receiving adequate medical treatment. May 18, 2022, Plaintiff was seen by Dr. Llorens, Plaintiff was told that his x rays were good and that nothing was wrong, and that he had a mild sprain. Plaintiff asked Dr. Llorens why he was not seen for a follow up within a week, and was told

there was no need. Plaintiff then asked Dr Llorens to please look at his foot because it was still swollen, inflamed, discolored, and very painful. Further Plaintiff asked if it was possible that the tendons, ligaments, or something else was torn or wrong. Dr. Llorens responded that you're getting old and it will take a long time to heal, and that the x rays showed you are fine. Dr. Lloren refused to give Plaintiff anything for pain and told Plaintiff to go back to work.

16. Plaintiff seen sick call R.N. Gilbert again on May 19, 2022, who told Plaintiff that another x ray was scheduled for May 23, 2022. R.N. Gilbert issued Plaintiff a lay-in for three days to wait for the x ray. On May 23, 2022 Plaintiff went to medical for further x rays.   The x rays were cancelled, and Plaintiff was again told to go back to work. On May 31, 2022 Plaintiff was again called in for x rays on his foot, for the third time. On June 3, 2022, Plaintiff was again called in to see Dr. Llorens. Dr. Llorens advised Plaintiff that his foot was indeed fractured. Plaintiff was advised by Dr. Llorens that because it had been so long and they missed the fracture that it will take six months to a year, or longer to heal. Dr. Llorens further advised that he would put Plaintiff in for a follow up to see an orthopedic surgeon, but that because of the time frame of the fracture there is nothing they can do. Plaintiff asked Dr Llorens for pain medication and a "Lay In" due to the fact that the foot swells as he walks and Plaintiff is in extreme

11

pain. Dr LLorens advised Plaintiff there was nothing he could do and ordered Plaintiff to return to work. Plaintiff was forced to continue to walk approximately ½ a mile to work, walk long hallways, and climbs stairs and at all times is in excruciating pain and with a swollen broken bone in his foot that feels like the leg is on fire.

17. Plaintiff on June 10, 2022, was seen again by Doctor Llorens at medical and was advised that he would be called that afternoon to be put in an air cast Plaintiff was told he would be evaluated again in three to six weeks. Plaintiff asked why now an air cast and what happened to an orthopedic surgeon!  He was told that they spoke with an orthopedic surgeon and was told this would heal. Petitioner asked Dr. Llorens if it was possible that the bone fracture in his foot would heal in a miss aligned position. Petitioner was told it is healing just fine, and because Plaintiff is old, it will take time.

18. On June 10, 2022, Plaintiff was in his dorm at approximately 5:30 p.m. when a nurse came to his room and put a Used Air Cast on him that she had brought over from the Union Correctional Work Camp. The nurse did not have the air canister to inflate the cast and told Plaintiff that next week they would put air in it. So what good was an Air Cast without air?? Plaintiff's leg has been moving inside the cast and has made the pain even worse becuse there is no stability and his foot is moving around inside the

cast, the swelling has increased and it has been seventy nine (79) days since Plaintiff's fracture.

19. Plaintiff put in a sick call on June 23, 2022, because he received his medical records and it revealed he had been given passes but was never issued any. Plaintiff had no idea what the passes were for. Further, Plaintiff still has had no air put in his air cast. Plaintiff's foot is moving around which is no different than wearing a shoe or having nothing at all.

20. Plaintiff was called to sick call on June 27, 2022, and was issued the passes, which were no pulling or lifting 15 lbs, a low bunk pass, an adaptive device, (air cast with no air) and no standing over 10 minutes, with 5 minute rest in between. This shows that if Plaintiff had not obtained his medical records he would have not ever known about any passes.

21. On July 5, 2022, Plaintiff was given another x ray and was told he would be advised of the results.

22. Plaintiff on July 8, 2022, was seen by Dr. Llorens. Dr. Llorens told Plaintiff that his foot was overlapping and that if he wanted he would put him in to see an orthopedic surgeon but that he wouldn't guarantee surgery. Plaintiff signed the papers required for a consultation but was only told what Dr. Llorens wanted to tell him, as he was not allowed to read the full printout. Sign or refuse was the answer Plaintiff received. Dr. Llorens further told Plaintiff that he would give him a prescription for Ibuprofen.

13

When Plaintiff advised Dr. Llorens that the air cast had not been inflated and his foot is moving inside the cast and is swelling with discoloration, and that he was still in extreme pain, Dr. LLorens just ignored this complaint. Further, when Plaintiff asked what was the point of having an un-inflated air cast since the cast was unable to provide the support to leg and foot that the manufacturer intended, Dr. Llorens ignored the question and stated this concludes the meeting.

23. Plaintiff has continued to walk around since June 10, 2022 with an air cast that has had no air put in it, even though Plaintiff has complained that his foot is moving around in the boot with no support, plaintiff has also complained to sick call nurses and work supervisors and Dr. Llorens. Plaintiff is forced to walk a half mile one way to work, walk long hallways, climb stairs due to his job, or Plaintiff would be put in confinement. Plaintiff suffers daily from walking on his foot that has not healed properly. Plaintiff has filed four (4) grievances and sick call requests, and medical and FDOC has been aware of the damaged foot since March 24, 2022, but continues to force Plaintiff to work and walk around in an air cast with no air, and severe chronic pain.

24. On July 22, 2022, Plaintiff went to Lake Butler Medical and Reception Center, where they x rayed Plaintiff's foot and then Plaintiff spoke with an orthopedic surgeon. Plaintiff was told that there is just a

small split in his fracture but it should not cause a problem in the future with healing. Plaintiff was told that he would wear the air cast for four to six more weeks and then be called for another x ray.

25. On July 27, 2022, Plaintiff was called to see Doctor Everett at Union CI. Plaintiff was giving a restricted work pass to keep him from walking long distance to the death row library, and was restricted to the Main unit library for work. Prior to this date, Plaintiff was forced to walk on a broken foot from March 24, 2022 until July 27, 2022.

26. Plaintiff fractured his foot on March 24, 2022 and was never giving an air cast until June 10, 2022. Plaintiff's foot, was already improperly mending  when the air cast was put on Plaintiff's foot. Plaintiff's foot should have already been immobilized in a boot cast three months prior to when air cast was finally placed on Plaintiff's foot. Plaintiff had walked on a fractured foot for Ninety days prior to anything being done and his foot was healing without the proper care. Plaintiff's foot has never been stable from the beginning. Plaintiff's ankle has swollen three times the normal size and when it is moved in certain ways it feels like it is on fire. Plaintiff has been left no choice but to seek judicial intervention and file this lawsuit.

## COUNT 1

## TITLE II OF THE AMERICANS WITH DISABILITIES ACT (ADA)
### (Against Defendant FDC)

27.  Plaintiff incorporates and re-alleges paragraphs 1 through 26 as it fully set forth herein.

28.  This count is brought under Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. 12101, et seq. and 42 U.S.C. §§ 12131-12134, and its implementing regulations.

29.  The ADA prohibits public entities from discriminating against individuals with disabilities in their services, programs, and activities. 42 U.S.C. §§ 12131-12134, *see also* 28 C.F.R. §§ 35.130. In other words, the ADA imposed an affirmative duty on public entities to create policies and procedures to prevent discrimination based on disability.

30.  Defendant FDC is a "public entity" within the meaning of 42 U.S.C. § 12131(1) and 28 C.F.R. § 35.104.

31.  Plaintiff has a Fracture Foot which is affecting his daily activities, 42 U.S.C. § 12102(1) & (2); 28 C.F.R. § 35.108(a) & (b). This physical impairment substantially limits one or more major life activities, including but not limited to walking, bending, lifting, concentrating, thinking, communicating, and has caused Plaintiff's blood pressure to rise due to the extreme pain suffered daily. 42 U.S.C. § 12102 (2); 28 C.F.R. § 35.108(c).

32. In other words, Plaintiff's Fractured Foot caused him to have a disability as defined under the ADA. Stated differently, Plaintiff's disability was a Fractured Foot.

33. Plaintiff has a record of having an impairment that substantially limits one or more major life activity, as he has a history of such impairment. 42 U.S.C. § 12102(1)(B); 28 C.F.R. § 35.108(a)(1)(ii) & (e).

34. Plaintiff is regarded as having an impairment that substantially limits one or more major life activity, as FDOC perceives them as having such impairment. 42 U.S.C. § 12102(1) (C) & (3); 28 C.F.R. § 35.108(a)(1)(iii) & (f). Defendant FDC has subjected Plaintiff to a prohibited action because of an actual or perceived physical impairment.

35. Plaintiff was a qualified individual with a disability because he met the essential eligibility requirements for the receipt of services or the participation in programs or activities provide by Defendant FDC, including but not limited to medical services. 42 U.S.C. § 12131(2): 28 C.F.R. § 35.104.

36. By withholding medical treatment from Plaintiff Kinard, but not withholding medical treatment from those with other disabilities or those who are not disabled, Defendant FDC excluded Plaintiff from participation in, and denied him the benefits of, FDC services, programs, and activities (such as medical services) by reason of disability. 42 U.S.C. § 12132; 28 C.F.R. § 35.130 (a).

37. By withholding medical treatment from those with fractures, but not withholding medical treatment from those with other disabilities or those

who are not disabled, Defendant FDC subjected Plaintiff to discrimination. 42 U.S.C. § 12132; 28 C.F.R. § 35.130 (a).

38. Defendant FDC failed to provide Plaintiff with equal access to and enjoyment of effective medical services. 28 C.F.R. § 35.130(b)(1).

39. Defendant FDC's refusal to provide Plaintiff with adequate medical care also denied Plaintiff access to prison services, programs, and activities that other inmates routinely access. For example, Plaintiff was unable to participate in recreation and other physical exercise, Further in the event of a prison fight, because of his physical condition; Plaintiff would be unable to escape quickly. Plaintiff's inability to participate in recreational activities in the prison yard isolates Plaintiff and denies him meaningful access to these prison services, programs, and activities.

40. Defendant FDC utilized criteria methods of administration that had the effect of subjecting Plaintiff to discrimination and that defeated or substantially impaired accomplishment of the objectives of medical treatment for his fractured foot. 28 C.F.R. § 35.130(b)(3).

41. Defendant FDC denied and delayed providing Plaintiff with the necessary treatment and reasonable accommodation for his fractured foot because FDOC's sordid history of failing to properly treat inmates.

42. Had Defendant FDC not delayed treatment, but instead provided plaintiff with adequate medical care and reasonable accommodation he

18

requested since March 24, 2022, Plaintiff would not have suffered additional injuries, Including both physical and emotional pain and suffering.

43. Defendant FDC owed Plaintiff a non-delegable duty to ensure that his well being would not be compromised as a result of discrimination based on his disability. As such, Defendant FDC is vicariously liable for the actions of any and all persons or entities Defendant FDC contracted out its medical services to or otherwise designated to care for Plaintiff.

44. As a direct and proximate cause of defendant FDC's actions and omissions, Plaintiff has suffered and continues to suffer from harm and violation of his ADA rights.

WHEREFORE, Plaintiff, Roy Kinard, demands judgment against Defendant FDC compensatory damages, including for physical injury, disfigurement, permanent physical injury, and emotional pain and suffering, for all prejudgment interest allowable under law, and costs incurred in connection with this litigation, and for such other relief as this court deems appropriate.

## COUNT II
## SECTION 504 OF THE REHABILITATION ACT (RA)
### (Against Defendant FDC)

45. Plaintiff incorporates and re-alleges paragraphs 1 through 26 as it fully set forth herein.

46. This count is brought under Section 504 of the Rehabilitation ACT (RA), 29 U.S.C. § 701, et seq. and 29 U.S.C. § 791-794, et seq., and its implementing regulations.

47. Section 504 of the RA prohibits discrimination against persons with disabilities by any program or activity receiving Federal financial assistance. 29 U.S.C. § 794(a).

48. Defendant FDC is a program or activity receiving federal financial assistance within the meaning of 29 U.S.C. § 794.

49. Defendant FDC excluded Plaintiff—a qualified individual with a disability—from participation in, and denied him the benefits of, programs or activities solely by reason of his disability (Fractured Foot). 29 U.S.C. § 794(a); 29 U.S.C. § 705(20); 28 C.F.R. § 42.503(a).

50. Defendant FDC subjected Plaintiff—a qualified individual with a disability—to discrimination. 29 U.S.C. § 794 (a).

51. Defendant FDC denied Plaintiff, a qualified handicapped person—the opportunity accorded to others to participate in programs and activities. 28 U.S.C. C.F.R. § 42.503(b)(1).

52. Defendant FDC utilized criteria or methods or administration that either purposely, or in effect, discriminate on the basis of handicap and defeat or substantially impair accomplishment of the objectives of FDC's programs or activities with respect to handicapped persons. 28 C.F.R. §

20

42.503(b)(3).

53. Defendant FDC knew about the violations described herein but failed to correct them, thereby exhibiting deliberate indifference to the rights of Plaintiff.

54. As a direct proximate cause of Defendants FDC's exclusion and discrimination, Plaintiff has suffered and continues to suffer from harm and violation of his RA rights.

WHEREFORE, Plaintiff, Roy Kinard, demands judgment against Defendant FDC compensatory damages, including for physical injury, disfigurement, permanent physical injury, and emotional pain and suffering, for all prejudgment interest allowable under law, and costs incurred in connection with this litigation, and for such other relief as this court deems appropriate.

## COUNT III
## 42 U.S.C. § 1983–EIGHTH AMENDNMENT MONELL CLAIM
### (Against Defendants Centurion & Doctor Llorens)

55. Plaintiff incorporates and re-alleges Paragraphs 1 through 26 as if fully set forth herein.

56. This count is brought through 42 U.S.C. § 1983 against Defendants Centurion and Doctor Llorens Chief Medical Director, for violation of the Eighth Amendment's prohibition of cruel and unusual

punishment on inmates for failure to provide adequate treatment.

57. At all times relevant hereto, Defendants Centurion and Doctor Llorens Chief Medical Director and their policymakers knew about and enforced policies, practices, and/or custom that exhibited deliberated indifference to Plaintiff's serious medical needs in violation of the Eighth Amendment. Defendants Centurion and Doctor Llorens Chief Medical Director, acting through their employees and agents, intentionally delayed, failed, and refused to provide Plaintiff with treatment that will address his serious medical needs despite knowing that their actions would result in Plaintiff's continued suffering from walking on a Fractured Foot for nearly five months, as of this date.

58. Defendants Centurion and Doctor Llorens Chief Medical Director, has caused wanton infliction of pain upon Plaintiff, due to a Fractured Foot, by exhibiting deliberate indifference to his serious medical needs and condition.

59. The refusal to provide treatment by Centurion and Doctor Llorens Chief Medical Director, acting through their employees and agents, worsened Plaintiff's serious medical condition. Left untreated, Plaintiff's medical needs posed a substantial risk of serious harm, and in fact, did cause actual harm. Defendants Centurion and Doctor Llorens, knew of this

substantial risk of harm, and the actual harm, faced by Plaintiff from walking around on a fractured foot for nearly five months and completely failed to alleviate those risks and harms. Thus, Defendants Centurion and Doctor Llorens have been deliberately indifferent to the substantial risk of serious harm posed to Plaintiff in connection with his fractured Foot.

60. By denying Plaintiff the medically needed treatment for his Fractured Foot, or unjustifiably delaying in providing such treatment, Defendants Centurion and Doctor Llorens imposed punishment far in excess of that authorized by law, contrary to the Eighth Amendment.

61. Defendants Centurion and Doctor Llorens delay and denial of the medically necessary treatment for Plaintiff's fractured Foot violated all standards of decency, contrary to the Eighth Amendment.

62. Defendants Centurion and Doctor Llorens actions with respect to Plaintiff amounted to grossly inadequate care; medical care that can only charitably be described as cursory such that it amounted to no care at all.

63. Plaintiff did not receive the constitutionally-required treatment, because even though cost of treatment in this case was not an issue, the defendants sordid and inexplicable past history of routinely denying inmates the medical care for serious medical needs is evident from the decision not to treat and repair/set the broken bone(s) in plaintiff's foot.

23

64. The constitutional violations of Defendants Centurion and Doctor Llorens, through the actions and omissions of their employees and agents, were directly and proximately caused by policies, practices, and/or customs implemented and enforced by Defendants Centurion and Doctor Llorens.

65. As a direct and proximate result of the policies, practices, customs, and deliberate indifference of Defendants Centurion and Doctor Llorens, Plaintiff has suffered damages, including permanent physical injuries and emotional pain and suffering.

WHEREFORE, Plaintiff, Roy Kinard, demands judgment against Defendants Centurion and Doctor Llorens for compensatory damages, punitive damages, and such other relief as this court deems appropriate.

I declare under penalty of perjury that I have read the above and that the foregoing statements of fact, including all continuation pages, are true and correct.

Dated this 15th, day of August, 2022.

/s/ Roy David Kinard

Roy David Kinard DC# 969084
Union Correctional Institution
P.O. Box 1000
Raiford, Florida 32083-1000

## **Mailing Certificate**

I certify under penalty of perjury that this complaint was provided to Union C.I. Correctional Staff for mailing to: Clerk of Court, United States District Court, Middle District of Florida, Jacksonville, Florida 300 North Hogan Street, Suite 9-150 Jacksonville, Florida 32202-4271, on this 15th day of August, 2022

/s/ _Roy David Kinard_

Roy David Kinard DC# 969084
Plaintiff pro se
Union Correctional Institution
P. O. Box 1000
Raiford, Florida 32083-1000